IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

| | |
|---|---|
| IN RE:<br><br>**FREIRICH FOODS, INC.,**<br><br>DEBTOR | **CASE NO. 24-50204<br>CHAPTER 11** |
| **MOTION FOR INTERIM AND FINAL ORDERS GRANTING AUTHORITY TO USE CASH COLLATERAL** ||

NOW COMES Freirich Foods, Inc. (the "Debtor") and moves the Court pursuant to §363 of the Bankruptcy Code and Rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedure as follows:

1. On March 20, 2024 (the "Petition Date"), the Debtor filed a voluntary petition seeking relief under Chapter 11 of the Bankruptcy Code and continues in possession of its assets as debtor-in-possession.

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334, and this matter is a core proceeding under 28 U.S.C. §157(b)(2). Venue is proper pursuant to 28 U.S.C. §§1408 and 1409.

3. The Debtor has filed the Declaration of Paul Bardinas in Support of First Day Motions.

4. The Debtor is a North Carolina corporation that presently conducts its business operations at a production facility located at 819 W. Kerr St., Salisbury, NC (the "Production Facility"). The Production Facility is titled in the name of Freirich Holdings, LLC, a wholly owned subsidiary of the Debtor.

5. In connection with its business operations, the Debtor obtained a revolving line of credit (the "Revolving Credit Loan") from First National Bank of Pennsylvania ("FNB"). The Revolving Credit Loan is evidenced and secured by certain documents, summarized as follows:

 a. Credit Agreement made effective May 5, 2020, as modified by First Amendment to Credit Agreement dated January _, 2022, and by Second Amendment to Credit Agreement dated May 5, 2023.

 b. Revolving Credit Promissory Note dated May 5, 2020, as modified by First Amended and Restated Revolving Credit Promissory Note dated January _, 2022.

 c. Security Agreement made effective May 5, 2020.

 d. UCC Financing Statement, filed May 5, 2020, with the NC Secretary of State.

 e. Guaranty executed by Freirich Holdings, LLC, dated May 5, 2020.

 f. Guaranty executed by Digna Freirich, dated May 5, 2020, limited to a maximum liability of $1,000,000.

 g. Subordination Agreement by Digna Freirich, Trustee of the Residuary QTIP Trust UA Jeff Freirich and by Digna Freirich, dated May 5, 2020.

6. FNB asserts a first priority security interest in all or substantially all the Debtor's assets, including accounts, inventory, equipment, general intangibles and proceeds and products thereof (the "Collateral"); however the Debtor believes FNB does not a security interest in (a) the Debtor's vehicles the ownership of which is evidence by certificates of title, (b) deposits held by professionals as security retainers, (c) the land, buildings, and permanent fixtures titled in the name of Freirich Holdings, LLC, although FNB has a lien upon the Debtor's member interests in the LLC, (d) a note receivable from officer, or (e) funds on deposit with Pinnacle Bank, except to the extent such funds are the identifiable proceeds of the Debtor's accounts.

7. The Debtor is not aware of any other liens or security interests against its assets,

except for two loans by other lenders secured by two vehicles.

8.   As of the Petition Date, the aggregate amount outstanding on the Revolving Credit Loan was $9,457,693 plus accrued interest (the "FNB Secured Claim").

9.   As of the Petition Date, the Collateral (the proceeds of which would constitute "Cash Collateral" as that term is defined in the Bankruptcy Code) presently consist of the following:

 a.   Deposit accounts at FNB, approximately $53,427.

 b.   Deposit accounts at Pinnacle Bank, the proposed DIP accounts, approximately $354,139.

 c.   Accounts receivable, approximately $5,168,398.

 d.   Membership interests in Freirich Holdings, LLC, which owns the land and buildings where the business is operated, approximately $800,000.

 e.   Inventory (at cost), approximately $5,687,082.

 f.   Office furniture, computers and software, approximately $64,201.

 g.   Machinery and equipment, approximately $508,123.

 h.   General intangibles, trademarks, trade names, trade secrets and going concern value of the operations, value unknown.

 i.   Claims arising from spoliation of product due to lack of refrigeration, value unknown.

10.  The FNB Secured Claim has not been scheduled as disputed, unliquidated or contingent, and the Debtor believes the liens and security interests described above are valid, properly perfected and not subject to avoidance; provided however, the Debtor reserves for itself, the Bankruptcy Administrator, any official committee of unsecured creditors subsequently created

(the "Committee"), and any trustee subsequently appointed in this Chapter 11 proceeding or in any subsequent Chapter 7 proceeding, any and all rights to challenge, avoid, object to, set aside or subordinate any claims, liens, security interests or rights of setoff against the Debtor's property, or the proceeds, profits and income generated therefrom.

11. The Debtor is dependent upon use of the Cash Collateral to pay on-going costs of operating the business and insuring, preserving, repairing, and protecting all its tangible assets, and thus has an immediate need for the use of Cash Collateral. If not permitted to use the Cash Collateral to pay these expenses, reorganization would be rendered impossible, the going concern value of the business will be lost, and the fair market value of the estate's assets will be significantly reduced, resulting in financial loss to all parties in interest. To that end, the Debtor requests the Court to authorize the use of Cash Collateral as set forth herein.

12. An order substantially in the form attached hereto as Exhibit A (the "Interim Order") granting interim relief, followed by a final hearing at some future date selected by the Court, would not prejudice the rights of FNB as (i) FNB would continue to maintain the existing liens on all its existing collateral and on replacement collateral as set forth below, and (ii) the use of Cash Collateral would preserve the value of the estate for the benefit of FNB and all other creditors.

13. The Debtor offers to provide FNB with adequate protection for the use of its Cash Collateral by:

    a. Limiting the use of Cash Collateral as generally projected in the proposed budget attached hereto or to be provided at the initial hearing (the "Budget") and as set forth in the proposed Interim Order, or as may otherwise be approved by the Court after further notice and hearing.

b.  Providing FNB with adequate protection payments in amounts equal to its non-default interest accruing on the FNB Secured Claim, monthly in arrears.

c.  Providing FNB with a continuing post-petition lien and security interest in all property and categories of property of the Debtor in which and of the same priority as said creditor held a similar, unavoidable lien as of the Petition Date, and the proceeds thereof, whether acquired pre-petition or post-petition (the "Post-petition Collateral"), equivalent to a lien granted under §§ 364(c)(2) and (3) of the Bankruptcy Code, but only to the extent of any diminution in the value of the Collateral from and after the Petition Date, including for avoidance of doubt the amount of any Cash Collateral used for purposes other than adequate protection payments to FNB.  The validity, enforceability, and perfection of the aforesaid post-petition liens on the Post-petition Collateral shall not depend upon filing, recordation, or any other act required under applicable state or federal law, rule, or regulation.

d.  To the extent that the protections described above fail to adequately protect FNB's interest in the Collateral, providing FNB an allowed priority claim under Section 507(b) of the Bankruptcy Code to the extent of any diminution in value of the Collateral from and after the Petition Date.

e.  Providing to FNB, the Bankruptcy Administrator and any Committee subsequently appointed (i) evidence of adequate insurance in effect with respect to all insurable property of the estate, and (ii) budget to actual reports on a monthly basis by the 20th day of the following month, with the first such report due by May 20, 2024, and (iii) such other financial reports as may be reasonably requested from the Debtor by such parties.

14. The Debtor seeks authority to use Cash Collateral through and including (i) the effective date of a confirmed plan of reorganization, (ii) a sale of substantially all assets of the estate, or (iii) the conversion of the case to Chapter 7, whichever may first occur; provided, however, without further notice and hearing the Debtor may not use Cash Collateral for any purpose other than (i) operations in the ordinary course of business, (ii) adequate protection payments to FNB, (iii) monthly payments on executory contracts or leases, or (iv) payment of allowed administrative fees, costs, or expenses.

15. The Debtor reserves the right to request in subsequent Orders that notwithstanding any suspension or termination of the right to use Cash Collateral (a "Termination Date"), the Debtor shall be permitted to carve out from Cash Collateral or any replacement collateral and use an aggregate amount necessary to pay all Permitted Trailing Expenses. As used herein, the term "Permitted Trailing Expenses" shall mean, on the Termination Date, the costs of operating and preserving the estate, including (i) allowed administrative fees, costs, or expenses, to the extent incurred post-petition and prior to such Termination Date, and (ii) other costs of operating and preserving the estate, but in the aggregate amount not to exceed one hundred ten percent (110%) of the aggregate amounts on a cumulative basis as set forth in the Budget through such Termination Date.

16. The Debtor proposes that in the event FNB has any objection to any of the items paid or provided for as set forth in the monthly reports or other reports of operations filed or furnished to said creditor, or objects to a proposed budget or to a specific manner in which Cash Collateral is being used, or seeks additional adequate protection in the future in addition to that provided herein, then said creditor may, upon five (5) business days' notice to (i) the Debtor, (ii) Debtor's counsel, (iii) counsel for the Committee (or if no committee has been appointed, the 20

largest unsecured creditors of the Debtor as reflected in the Debtor's Schedules), and (iv) the Bankruptcy Administrator and opportunity to cure, on an expedited basis:

    a. Seek an order of the Bankruptcy Court restraining such payments or usage as not being in conformity with this Motion; or

    b. Seek an Order terminating further authority to use Cash Collateral altogether.

17. While the Debtor seeks the consent of FNB to the use of Cash Collateral on an interim basis and for the purposes set forth in this Motion, in the absence of such consent the Debtor asks the Court to authorize such use and to provide adequate protection to such creditor to the extent the use of Cash Collateral impairs such creditor's interest, in a manner and to the extent to be determined by the Court at the hearing on this Motion.

Wherefore, the Debtor prays the Court for the following relief:

1. Enter an Interim Order in the form attached hereto as <u>Exhibit A</u>, after notice and hearing (i) authorizing the Debtor to use Cash Collateral in an amount to be determined at the interim hearing based upon the Budget attached hereto, and (ii) providing FNB with adequate protection as set forth herein.

2. Schedule a further hearing to be held regarding this motion, the Interim Order, and the Debtor's request for a final order, after providing such notice as is required by Rule 4001 of the Federal Rules of Bankruptcy Procedure.

3. Such other relief as the Court may deem necessary and proper.

Date:  March 20, 2024

/s/ John A. Northen

**Counsel for the Debtor:**
John A. Northen, NCSB #6789
jan@nbfirm.com
Vicki L. Parrott, NCSB #25449
vlp@nbfirm.com
Northen Blue, LLP
Post Office Box 2208
Chapel Hill, NC 27515-2208
Telephone:  919-968-4441

Cash Collection Budget Freirich Foods 3-20-2024 FINAL

| BUDGET | Week ending | 3/22/2024 | 03/29/24 | 04/05/24 | 04/12/24 | 04/19/24 | 04/26/24 | 05/03/24 | 05/10/24 |
|---|---|---:|---:|---:|---:|---:|---:|---:|---:|
| | Beginning Cash | $ 407,566 | $ 1,080,423 | $ 2,078,848 | $ 1,907,011 | $ 1,877,061 | $ 1,967,357 | $ 2,096,382 | $ 2,102,868 |
| **Receipts:** | | | | | | | | | |
| Revenue | Meat sales | $601,857 | $683,865 | $690,804 | $970,829 | $886,679 | $821,504 | $787,822 | $1,242,400 |
| Chg in AR | A/R receipts over/<under> sales | $100,000 | $500,000 | $400,000 | $300,000 | $293,398 | $200,000 | $100,000 | ($100,000) |
| Deductions | Promotional rebate/ promo/ sample dedu | (20,000) | (20,000) | (20,000) | (15,000) | (15,000) | (15,000) | (15,000) | (15,000) |
| Deductions | Freight deductions - BJ's | (9,000) | (9,000) | (9,000) | (9,000) | (9,000) | (9,000) | (9,000) | (9,000) |
| | Total receipts | $ 672,857 | $ 1,154,865 | $ 1,061,804 | $ 1,246,829 | $ 1,156,077 | $ 997,504 | $ 863,822 | $ 1,118,400 |
| **Disbursements:** | | | | | | | | | |
| Materials | Meat purchases (See hist model) | - | - | 940,471 | 989,289 | 829,542 | 583,268 | 559,353 | 782,104 |
| Materials | Ingredient and packaging purchases | - | - | 49,418 | 73,292 | 74,725 | 74,100 | 71,065 | 83,615 |
| | | | - | | | | | | |
| Payroll | Payroll expense - plant (incl pr taxes & fees) | | 48,000 | 52,000 | 52,000 | 52,000 | 52,000 | 52,000 | 52,000 |
| Payroll | Payroll expense - mgmt / sales (incl pr taxes & fees) | | 14,000 | 14,000 | 14,000 | 14,000 | 28,000 | 14,000 | 14,000 |
| Payroll | Staffing agency expense | | 28,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 |
| Benefits | Worker's Comp insurance exp | | | - | 8,800 | | | | |
| Benefits | Health insurance exp | | | 10,304 | | | | 10,304 | |
| Benefits | Dental insurance exp | | | 1,550 | | | | 1,550 | |
| Benefits | STD and ADD insurance exp | | | 925 | | | | 925 | |
| Utilities | Electric exp | | 21,762 | | | | 13,000 | | |
| Utilities | Natural gas exp | | 10,200 | | | | 10,500 | | |
| Utilities | Water/sewer exp | | 19,128 | | | | 17,000 | | |
| Utilities | Sewer surcharge -qrtly | | | | | | | | 26,500 |
| Utilities | Telephone exp | | 850 | | | | 850 | | |
| Operating | Sanitation supply exp | | | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 |
| Operating | Uniform exp (coats,boots) | | | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| Operating | Trailer rental short term | | | - | 12,000 | | | 3,000 | |
| Operating | Equipment rental - pallet jacks | | | | 6,900 | | | | 6,900 |
| Operating | Fuel expense - trailers | | 2,000 | - | 1,500 | - | 1,500 | | 1,500 |
| Operating | Repairs & maint exp - bldg & equip | | | 14,500 | 14,500 | 14,500 | 14,500 | 14,500 | 114,500 |
| Operating | Ice purchases | | | 2,000 | - | - | 2,000 | - | 2,000 |
| Operating | USDA inspection exp | | | 800 | 800 | 800 | 800 | 800 | 800 |
| Operating | Plant supplies exp | | | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 |
| Operating | Disposal fees | | | 12,200 | 12,200 | 2,500 | 2,500 | | |
| Freight | Freight expense | | 12,500 | 27,048 | 23,567 | 29,114 | 23,711 | 21,363 | 19,983 |
| Selling | Sales travel | | | | | 2,000 | | | |
| Selling | Sales expense - supplies | | | | | 500 | | | |
| Selling | Sales - foodshow exp | | | | | 1,000 | | | |
| Selling | Broker commission exp | | | - | | - | - | - | |
| Selling | Advertising - coop | | | | | 350 | | | |
| G&A | Ppty and liab insurance exp | | | | 21,000 | | | | |
| G&A | Postage exp | | - | 200 | | | | 200 | |
| G&A | Office supplies exp | | - | 250 | 250 | 250 | 250 | 300 | 300 |
| G&A | Software maint - Aspen | | | 1,000 | | | | 1,000 | |
| G&A | Online maint exp - SPS/Itrade | | - | 2,000 | - | - | - | 2,000 | - |
| G&A | Dues & subscriptions exp | | - | 500 | - | - | - | 500 | - |
| G&A | Computer consulting exp | | - | 2,400 | - | - | - | 2,400 | - |
| G&A | Professional fees (legal & acctg) | | - | | | | | | |
| G&A | Bank account service fees | | - | 1,000 | - | - | - | 1,000 | - |
| Princ & int | Auto loan - Hyundai | | | | 1,235 | | | | 1,235 |
| Princ & int | Auto loan - BMW | | | | 946 | | | | 946 |
| Interest | FNB adequate protection payment | | - | 56,575 | | | | 56,575 | |
| | Quarterly Court Fees | | | | | | | - | |
| | Total Disbursements | - | 156,440 | 1,233,641 | 1,276,779 | 1,065,781 | 868,479 | 857,336 | 1,150,883 |
| | Net incr <decr> in cash from budget | 672,857 | 998,425 | (171,837) | (29,950) | 90,297 | 129,025 | 6,486 | (32,482) |
| Principal | FNB adequate protection payment | - | - | - | - | - | | | |
| | Ending Cash | $ 1,080,423 | $ 2,078,848 | $ 1,907,011 | $ 1,877,061 | $ 1,967,357 | $ 2,096,382 | $ 2,102,868 | $ 2,070,386 |

Cash Collection Budget Freirich Foods 3-20-2024 FINAL

| Week ending | 05/17/24 | 05/24/24 | 05/31/24 | 06/07/24 | 06/14/24 | 06/21/24 | 06/28/24 | 15 week totals |
|---|---|---|---|---|---|---|---|---|
| Beginning Cash | $ 2,070,386 | $ 2,166,930 | $ 2,220,046 | $ 2,269,280 | $ 2,298,382 | $ 2,371,706 | $ 2,478,916 | Cum. Totals |
| | | | | | | | | |
| Meat sales | $796,836 | $1,181,108 | $1,046,516 | $913,990 | $1,068,101 | $1,224,526 | $894,260 | $ 13,811,097 |
| A/R receipts over/<under> sales | $100,000 | ($100,000) | $0 | $0 | $0 | $0 | $100,000 | $ 1,893,398 |
| Promotional rebate/ promo/ sample dedu | (15,000) | (15,000) | (15,000) | (15,000) | (15,000) | (15,000) | (15,000) | $ (240,000) |
| Freight deductions - BJ's | (9,000) | (9,000) | (9,000) | (9,000) | (9,000) | (9,000) | (9,000) | $ (135,000) |
| **Total receipts** | $ 872,836 | $ 1,057,108 | $ 1,022,516 | $ 889,990 | $ 1,044,101 | $ 1,200,526 | $ 970,260 | $ 15,329,495 |
| | | | | | | | | |
| | | | | | | | | $ - |
| Meat purchases (See hist model) | 565,753 | 738,587 | 643,026 | 648,933 | 758,352 | 869,413 | 634,925 | $ 9,543,017 |
| Ingredient and packaging purchases | 51,059 | 63,048 | 58,105 | 47,263 | 61,285 | 62,487 | 51,672 | $ 821,135 |
| | | | | | | | | $ - |
| Payroll expense - plant  (incl pr taxes & fee | 52,000 | 52,000 | 52,000 | 52,000 | 52,000 | 52,000 | 52,000 | $ 724,000 |
| Payroll expense - mgmt / sales  (incl pr tax | 14,000 | 22,000 | 14,000 | 14,000 | 14,000 | 22,000 | 14,000 | $ 226,000 |
| Staffing agency expense | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | 32,000 | $ 444,000 |
| Worker's Comp insurance exp | | | | | | | | $ 8,800 |
| Health insurance exp | | | 10,304 | | | | 10,304 | $ 41,216 |
| Dental insurance exp | | | 1,550 | | | | 1,550 | $ 6,200 |
| STD and ADD insurance exp | | | 925 | | | | 925 | $ 3,700 |
| Electric exp | | | 16,000 | | | | 16,000 | $ 66,762 |
| Natural gas exp | | | 9,000 | | | | 8,000 | $ 37,700 |
| Water/sewer exp | | | 17,000 | | | | 17,000 | $ 70,128 |
| Sewer surcharge -qrtly | | | | | | | | $ 26,500 |
| Telephone exp | | | 850 | | | | 850 | $ 3,400 |
| Sanitation supply exp | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | $ 97,500 |
| Uniform exp  (coats,boots) | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | $ 26,000 |
| Trailer rental short term | | | | 3,000 | | | | $ 18,000 |
| Equipment rental - pallet jacks | | | | 6,900 | | | | $ 20,700 |
| Fuel expense - trailers | | 1,500 | | 1,000 | | 1,000 | - | $ 10,000 |
| Repairs & maint exp - bldg & equip | 14,500 | 14,500 | 14,500 | 14,500 | 14,500 | 14,500 | 14,500 | $ 288,500 |
| Ice purchases | - | 2,000 | - | 2,000 | - | 2,000 | - | $ 12,000 |
| USDA inspection exp | 800 | 800 | 800 | 800 | 800 | 800 | 800 | $ 10,400 |
| Plant supplies exp | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | $ 39,000 |
| Disposal fees | | | | | | | | $ 29,400 |
| Freight expense | 29,529 | 18,960 | 26,745 | 23,162 | 21,540 | 24,316 | 26,355 | $ 327,891 |
| Sales travel | 2,000 | | | | 2,000 | | | $ 6,000 |
| Sales expense - supplies | 500 | | | | 500 | | | $ 1,500 |
| Sales - foodshow exp | 1,000 | | | | 1,000 | | | $ 3,000 |
| Broker commission exp | | 45,797 | - | | | | 20,539 | $ 66,336 |
| Advertising - coop | 350 | | | 350 | | | 350 | $ 1,400 |
| Ppty and liab insurance exp | | | | | | | | $ 21,000 |
| Postage exp | | | 200 | | | | 200 | $ 800 |
| Office supplies exp | 300 | 300 | 300 | 300 | 300 | 300 | 300 | $ 3,700 |
| Software maint - Aspen | | | 1,000 | | | | 1,000 | $ 4,000 |
| Online maint exp - SPS/Itrade | - | - | 2,000 | - | - | - | 2,000 | $ 8,000 |
| Dues & subscriptions exp | - | - | 500 | - | - | - | 500 | $ 2,000 |
| Computer consulting exp | - | - | 2,400 | - | - | - | 2,400 | $ 9,600 |
| Professional fees (legal & acctg) | | | | | | | | $ - |
| Bank account service fees | - | - | 1,000 | - | - | - | 1,000 | $ 4,000 |
| | | | | | | | | |
| Auto loan - Hyundai | | | | 1,235 | | | | $ 3,705 |
| Auto loan - BMW | | | | 946 | | | - | $ 2,838 |
| FNB adequate protection payment | | | 56,575 | | | | 56,575 | $ 226,302 |
| Quarterly Court Fees | | | | | | | 56,449 | $ 56,449 |
| **Total Disbursements** | 776,291 | 1,003,993 | 973,282 | 860,888 | 970,776 | 1,093,316 | 1,034,694 | $ 13,322,579 |
| | | | | | | | | |
| Net incr <decr> in cash from budget | 96,544 | 53,116 | 49,234 | 29,102 | 73,325 | 107,209 | (64,434) | $ 2,006,916 |
| FNB adequate protection payment | | | | | - | - | | $ - |
| **Ending Cash** | $ 2,166,930 | $ 2,220,046 | $ 2,269,280 | $ 2,298,382 | $ 2,371,706 | $ 2,478,916 | $ 2,414,482 | $ 2,414,482 |

<u>EXHIBIT A</u>

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION**

| | |
|---|---|
| IN RE:<br><br>**FREIRICH FOODS, INC.,**<br><br>DEBTOR | **CASE NO. 24-50204**<br>**CHAPTER 11** |
| **INTERIM ORDER GRANTING AUTHORITY<br>TO USE CASH COLLATERAL** ||

This matter came before the Court after due notice for hearing on March __, 2024 to consider the Motion for Interim and Final Orders Granting Authority to Use Cash Collateral (the "<u>Motion</u>") filed by Freirich Foods, Inc. (the "<u>Debtor</u>") pursuant to §363 of the Bankruptcy Code and Rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedure.

John A. Northen and Vicki L. Parrott appeared at the hearing on behalf of the Debtor; [J. P. Cournoyer/Sarah Bruce] appeared at the hearing on behalf of the Office of the United States Bankruptcy Administrator; and [_____] appeared at the hearing on behalf of First National Bank of Pennsylvania. In support of this Motion, the Debtor filed the Declaration of Paul Bardinas in Support of First Day Motions, and Paul Bardinas, the Debtor's President, and Doug Sokolowski, the Debtor's Vice President Finance, appeared and presented testimony at the hearing.

The Court finds that: (i) it has jurisdiction over this matter pursuant to 28 U.S.C. § 1334; (ii) it has statutory authority under 28 U.S.C. § 157(b)(2) and constitutional authority to hear and determine and to issue final rulings in this constitutionally core proceeding; (iii) venue of this case and the Motion are proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409; and (iv) notice and service of the Motion was sufficient under the circumstances and for purposes of the relief granted herein.[1]

After due consideration of the matters set forth in the Motion, the evidence presented, the record in this case, and the comments of parties wishing to be heard, it appears to the Court that use of cash collateral subject to the terms and conditions set forth below is reasonable and appropriate, in the best interests of the bankruptcy estate and all creditors, and should be approved on an interim basis, and for good and sufficient reasons appearing the Court makes the following findings, conclusions and orders:

1. On March 20, 2024 (the "Petition Date"), the Debtor filed a voluntary petition seeking relief under Chapter 11 of the Bankruptcy Code and continues in possession of its assets as debtor-in-possession.

2. The Debtor is a North Carolina corporation that presently conducts its business operations at nineteen (19) restaurant locations in North Carolina, South Carolina and Virginia (the "Open Locations").

3. The Debtor is a North Carolina corporation that presently conducts its business operations at a production facility located at 819 W. Kerr St., Salisbury, NC (the "Production

---

[1] The Debtor filed a certificate of service indicating the Motion and the Order scheduling the hearing were served on the Bankruptcy Administrator, the Debtor's twenty largest unsecured creditors, First National Bank of Pennsylvania, the Internal Revenue Service, the Attorney General for the United States, the U.S. Attorney for the Middle District of North Carolina, the North Carolina Department of Revenue, and the Employment Security Commission, and that service was provided by electronic mail, overnight courier or next day United States mail, in the manner provided under Bankruptcy Rule 7004.

Facility"). The Production Facility is titled in the name of Freirich Holdings, LLC, a wholly owned subsidiary of the Debtor.

4. In connection with its business operations, the Debtor obtained a revolving line of credit (the "Revolving Credit Loan") from First National Bank of Pennsylvania ("FNB"). FNB asserts a first priority security interest in all or substantially all the Debtor's assets, including accounts, inventory, equipment, general intangibles and proceeds and products thereof (the "Collateral"); however the Debtor believes FNB does not a security interest in (a) the Debtor's vehicles the ownership of which is evidence by certificates of title, (b) deposits held by professionals as security retainers, (c) the land, buildings, and permanent fixtures titled in the name of Freirich Holdings, LLC, although FNB has a lien upon the Debtor's member interests in the LLC, (d) a note receivable from officer, or (e) funds on deposit with Pinnacle Bank, except to the extent such funds are the identifiable proceeds of the Debtor's accounts. The Debtor is not aware of any other liens or security interests against its assets.

5. The Debtor reports that as of the Petition Date, the aggregate amount outstanding on the Revolving Credit Loan was $9,457,693 plus accrued interest (the "FNB Secured Claim").

6. The Debtor reports that as of the Petition Date, the Collateral (the proceeds of which would constitute "Cash Collateral" as that term is defined in the Bankruptcy Code) presently consist of the following:

    a. Deposit accounts at FNB, approximately $53,427.

    b. Deposit accounts at Pinnacle Bank, the proposed DIP accounts, approximately $354,139.

    c. Accounts receivable, approximately $5,168,398.

    d. Membership interests in Freirich Holdings, LLC, which owns the land and

buildings where the business is operated, approximately $800,000.

e. Inventory (at cost), approximately $5,687,082.

f. Office furniture, computers and software, approximately $64,201.

g. Machinery and equipment, approximately $508,123.

h. General intangibles, trademarks, trade names, trade secrets and going concern value of the operations, value unknown.

i. Claims arising from spoliation of product due to lack of refrigeration, value unknown.

7. The FNB Secured Claim has not been scheduled as disputed, unliquidated or contingent, and the Debtor believes that the liens and security interests described above are valid, properly perfected and not subject to avoidance. The Debtor reserves for itself, the Bankruptcy Administrator, any official committee of unsecured creditors subsequently created (the "<u>Committee</u>"), any trustee subsequently appointed in this Chapter 11 proceeding or in any subsequent Chapter 7 proceeding, or any other party in interest any and all rights to challenge, avoid, object to, set aside or subordinate any claims, liens, security interests or rights of setoff against the Debtor's property, or the proceeds, profits and income generated therefrom.

8. The Debtor is dependent upon use of the Cash Collateral to pay on-going costs of operating the business and insuring, preserving, repairing, and protecting all its tangible assets, and thus has an immediate need for the use of Cash Collateral. If not permitted to use the Cash Collateral to pay these expenses, reorganization would be rendered impossible, the going concern value of the business will be lost, and the fair market value of the estate's assets will be significantly reduced, resulting in financial loss to all parties in interest. To that end, the Debtor requests the Court to authorize the use of Cash Collateral as set forth herein.

9. An interim order (the "Interim Order") granting interim relief, followed by a final hearing at some future date selected by the Court, would not prejudice the rights of FNB as (i) FNB would continue to maintain the existing liens on all its existing collateral and on replacement collateral as set forth below, and (ii) the use of Cash Collateral would preserve the value of the estate for the benefit of FNB and all other creditors.

Based upon the foregoing, the Court concludes that interim use of Cash Collateral is necessary and that an Order granting interim relief, followed by a further or final hearing upon due notice, would not prejudice the rights of FNB, and for good and sufficient reasons appearing it is hereby ORDERED as follows:

1. Subject to the terms and conditions contained in this Order, the Debtor may use Cash Collateral in accordance with Section 363 on an interim basis and for the period through and including _____, 2024, in the amounts and for the purposes set forth in the interim budget for such period attached hereto (the "Budget"). During the period this interim order is in effect, the Debtor is authorized to make expenditures for expenses as outlined in the Budget, and the Debtor is further authorized to make additional expenditures, not to exceed ten percent (10%) of the aggregate monthly expenditures on a cumulative basis, should the need arise. However, the Debtor is not authorized to make expenditures exceeding 10% of the budgeted monthly amount without prior written approval from the FNB. Notwithstanding the foregoing, should FNB not respond within 24 hours to a request for approval to exceed 10% of the Budget made by the Debtor pursuant to this paragraph, the written approval of FNB shall not be required.

2. The Debtor has agreed to provide FNB with adequate protection for the use of its Cash Collateral by:

a. Limiting the use of Cash Collateral as generally projected in the proposed budget attached hereto (the "Budget") and as set forth in this Interim Order, or as may otherwise be approved by the Court after further notice and hearing.

b. Providing FNB with adequate protection payments in amounts equal to its non-default interest accruing on the FNB Secured Claim, monthly in arrears, pending further hearings.

c. Providing FNB with a continuing post-petition lien and security interest in all property and categories of property of the Debtor in which and of the same priority as said creditor held a similar, unavoidable lien as of the Petition Date, and the proceeds thereof, whether acquired pre-petition or post-petition (the "Post-petition Collateral"), equivalent to a lien granted under §§ 364(c)(2) and (3) of the Bankruptcy Code (subject to the carve-out for Permitted Trailing Expenses provided below), but only to the extent of any diminution in the value of the Collateral from and after the Petition Date, including for avoidance of doubt the amount of any Cash Collateral used for purposes other than adequate protection payments to FNB. The validity, enforceability, and perfection of the aforesaid post-petition liens on the Post-petition Collateral shall not depend upon filing, recordation, or any other act required under applicable state or federal law, rule, or regulation.

d. To the extent that the protections described above fail to adequately protect FNB's interest in the Collateral, providing FNB an allowed priority claim under Section 507(b) of the Bankruptcy Code to the extent of any diminution in value of the Collateral from and after the Petition Date.

e. Providing to FNB, the Bankruptcy Administrator and any Committee subsequently appointed (i) evidence of adequate insurance in effect with respect to all insurable property of the estate, and (ii) budget to actual reports on a monthly basis by the 20th day of the following month, with the first such report due by May 20, 2024, and (iii) such other financial reports as may be reasonably requested from the Debtor by such parties.

f. Pay all applicable insurance premiums, taxes and other governmental charges as they come due, and make all tax deposits and file all applicable tax returns on a timely basis.

3. Notwithstanding any suspension or termination of the right to use Cash Collateral (a "Termination Date"), there shall be carved out from Cash Collateral or any replacement collateral an aggregate amount necessary to pay all Permitted Trailing Expenses. As used herein, the term "Permitted Trailing Expenses" shall mean, on the Termination Date, the costs of operating and preserving the estate, including (i) allowed administrative fees, costs, or expenses, to the extent incurred post-petition and prior to such Termination Date, and (ii) other costs of operating and preserving the estate, but in the aggregate amount not to exceed one hundred ten percent (110%) of the aggregate amounts on a cumulative basis as set forth in the Budget through such Termination Date.

4. In the event the Debtor fails to comply with the requirements set forth hereinabove, or if FNB, the Bankruptcy Administrator or any Committee subsequently appointed has any objection to any of the items paid or provided for as set forth in the monthly reports or other reports of operations filed or furnished by the Debtor, or objects to a proposed budget or to a specific manner in which Cash Collateral is being used, then said party may, upon five (5) business days' notice to (i) the Debtor, (ii) Debtor's counsel, (iii) counsel for the Committee, or if no committee

has been appointed, the 20 largest unsecured creditors of the Debtor as reflected in the Debtor's Schedules, and (iv) the Bankruptcy Administrator, on an expedited basis:

    a.    Seek an order of the Bankruptcy Court restraining such payments or usage as not being in conformity with this Motion; or

    b.    Seek an Order terminating further authority to use Cash Collateral altogether.

5.    The terms and conditions of this Order do not necessarily constitute adequate protection of the interests of FNB in its Cash Collateral. Nothing in this Order shall waive any rights of any creditor unless expressly provided for herein, including but not limited to the right to assert any claim pursuant to Section 507(b) of the Bankruptcy Code with priority over all other expenses of administration in this case and any ensuing Chapter 7 case.

6.    This Order shall remain in full force and effect until the earlier of (a) entry of an Order by the Court modifying the terms of this Order, (b) entry of an Order by the Court terminating the right to use Cash Collateral, (c) the effective date of any confirmed plan, (d) conversion to Chapter 7, or (e) dismissal of the case.

7.    Nothing contained herein shall be deemed a waiver by FNB from seeking further or additional adequate protection of its collateral, asserting objections to the Debtor's further use of Cash Collateral, or pursuing any other rights or remedies available to it under law or equity.

8.    If any or all of the provisions of this Order are hereafter modified, vacated or stayed by any subsequent order of this Court or any other court, such stay, modification or vacation shall not affect the validity or enforceability of any lien or priority authorized or created hereby prior to the effective date of such modification, stay, vacation or final order to the extent that said lien or priority is valid, perfected, enforceable and otherwise non-avoidable as of the Petition Date. The validity and enforceability of all liens and priorities authorized or created in this Order shall survive

the conversion of this case to a proceeding under Chapter 7 of the Bankruptcy Code or the dismissal of this proceeding.

9. The terms of this Order shall be binding upon any Committee (if formed), and upon any trustee subsequently appointed, including but not limited to a Chapter 11 trustee or a Chapter 7 trustee upon conversion of this case to a case under Chapter 7 of the Bankruptcy Code. Nothing contained herein shall prevent a creditor, the Bankruptcy Administrator, any official creditors' committee or other party in interest from contesting the validity, perfection and enforceability, or priority of a secured party's liens or the amounts owing to FNB, or from raising any defenses, offsets, deductions or counterclaims thereto. The Debtor does not hereby waive, and expressly reserves for itself and the bankruptcy estate (including the Bankruptcy Administrator, any subsequently appointed Chapter 7 Trustee, other parties in interest and any Committee in this proceeding) the right to raise any defenses, offsets, deductions or counterclaims to, or to challenge the amount, validity, perfection, enforceability or priority of the prepetition liens and amounts owed which are asserted by FNB and, derivatively, any replacement lien provided for hereunder.

10. FNB does not hereby waive, and expressly reserves for itself, the right to raise any and all rights, remedies, and defenses under the applicable agreements, contracts, liens, and other agreements with the Debtor or any other person or entity. FNB further expressly reserves for itself the right to raise any and all matters, claims and or/defenses, of any kind or nature relating to any matter whatsoever specifically including, without limitation, the right to challenge valuations of the collateral securing the repayment of the agreements and contracts provided by the Debtor and other liens in connection with the instant bankruptcy proceeding.

11. Subject to the foregoing, the findings, conclusions, or orders set forth herein are made on an interim basis, shall not constitute a final decision on any legal or factual issue, and are

without prejudice to the right of any party to raise, contest, or seek the same or a different outcome at any subsequent hearing.

    12.    A further hearing (which may be a final hearing) on the Motion will be held at _____ (Eastern) on _____, 2024, at the Courtroom, _____, _____, NC, at which time the Court will further consider the Motion for Authority To Use Cash Collateral; *provided however,* FNB shall file a proof of claim prior to any final hearing on the use of cash collateral.

    13.    Counsel for the Debtor shall serve a copy of this Order upon all parties in interest and shall file a certificate of such service with the Clerk.

[End of Document]